2:08-cv-02079-HAB-DGB    # 1    Page 1 of 10

**E-FILED**
Thursday, 27 March, 2008  04:21:29 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION



**FILED**

MAR 2 7 2008

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, ILLINOIS

| | |
|---|---|
| DONALD KRULL, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 08 - 2079 |
| | ) |
| THE CITY OF URBANA, ILLINOIS, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### *** EQUITABLE RELIEF SOUGHT ***

Plaintiff, by his attorney Auler Law Offices, P.C., complains of Defendant as follows:

### Statement of Jurisdiction Pursuant to Rule 8(a)

This court has jurisdiction pursuant to 28 U.S.C. 1331 because Plaintiff is seeking relief

from an unconstitutional ordinance of a municipality of the state of Illinois.

### Grounds for Relief

#### *Overview*

1.    Plaintiff lives within Defendant City of Urbana, Illinois.

2.    Plaintiff rents the residence in which he lives.

3.    Plaintiff has lived at the same residence since 1999 and his current lease has been

in effect since August 2006.

4.      On January 16, 2007, Defendant enacted an ordinance designated "Ordinance No. 2006-08-109" and entitled "An Ordinance Adopting a Registration and Inspection Program for Residential Properties Being Rented Within the City of Urbana, Illinois." A copy of said ordinance is attached hereto as Exhibit A.

5.      The ordinance establishes a regime of systematic unconstitutional searches and takings and is void for at least the following reasons:

   a.      The ordinance rsts upon the claim that inspection of housing in the city of Urbana is justified by health and safety concerns, but makes no rational finding as to why private owner-occupied property is exempt.

   b.      The ordinance's vague and ambiguous scoring system (Section 10, "Assignment of Classifications") fails to give sufficient notice to tenants and landlords to be consistent with due process, fails to give sufficient guidance for enforcement to be consistent with due process, and appears to provide for uncompensated taking of a tenant's leasehold.

   c.      The ordinance's defective notice provisions allow for warrantless searches without consent or notice in a variety of circumstances.

   d.      The ordinance lacks any legislative guidance regulating the execution of searches.

   e.      The ordinance's premises for determining who will be searched and taxed are so vague and ambiguous that they cannot be applied reasonably; and to the extent they can be assigned meaning, most lack any rational basis.

   f.      Without any rational basis, the ordinance distinguishes between multi-unit structures in which the units are owned from those in which they are leased,

disproportionately burdening the city's large, predominantly leasing, transient

population, which had no representation in the passage of Defendant's ordinance.

6.     Defendant has commenced searches pursuant to the ordinance and has already

searched other units in Plaintiff's apartment building.

7.     Plaintiff has objected to Defendant with respect to Defendant's intent to search

Plaintiff's residence.

8.     Defendant maintains its intent to search Plaintiff's residence, over Plaintiff's

objection, at a time of Defendant's choosing.

9.     Plaintiff is sensitive about his privacy and would be grievously distraught were

his residence searched.

10.     Plaintiff has no adequate remedy at law because damages will be insufficient to

compensate the subjective trauma he would experience incident to a search, and because

there are no other applicable legal devices, such as the exclusionary rule in criminal

cases, that can protect him.

**A.     Because Section 10's "Assignment of Classifications" scheme disallows habitation of properties under a vaguely described and indecipherably ambiguous system, or for arbitrary reasons, it provides for unconstitutional takings of tenants' leaseholds without any compensation or due process of law.**

*"Class F"*

11.     The ambiguous language of "Class F", in Subsection 10(e), leaves totally open,

the important question of under what circumstances an issue with one tenant's unit will

make the whole building uninhabitable under the ordinance.

12.     The section begins, "*Building* is not in compliance . . . and may not be occupied."

(Emphasis added.)  But the rest of the subsection only talks in terms of "the unit" – not "a

unit" – as though the specific unit causing the problem is the only one declared uninhabitable.

13.      Because "Class E", Subsection 10(d), explicitly states that occupancy of "all or a portion of the buildling" may be disallowed, while "Class F", Subsection 10(e) lacks similar language, "Class F" applies to entire buildings at a time.

14.      Therefore under the "Class F" rules innocent tenants will lose their leaseholds over circumstances beyond their knowledge, control, or responsibility, and possibly attenuated from legitimate safety concerns. One small-timer selling pot at the far end of the building throws all the tenants in the building out of their homes.

15.      Just as importantly, under any construction of "Class F", the explicit language of the opening paragraph of Subsection 10 allows Defendant to invoke the "Class F" provisions *without an inspection for finding of fact.* While the public record might prove the underlying facts that a tenant was convicted of selling drugs, there is no such record to prove overoccupancy or any other conditions "which render the unit unsuitable for habitation." Inspection is the only way to ascertain such facts and the ordinance explicitly short-circuits it. It is hard to imagine a more manifest violation of due process than when a government body goes "enforcing" laws without finding any facts first.

*"Class E"*

16.      The standards for disallowing inhabitance under "Class E", Subsection 10(d), are also too vague to give tenants and landlords reasonable notice or to give reasonable guidance for enforcement. There are manifold conditions which would meet the subsection's mind-bogglingly vague language but clearly could not constitutionally

support quashing a tenant's vested leasehold or a landlord's economic expectation in his property.

17.    Subsection 10(d) allows for disallowance of occupancy if the building "is unlawful," which could mean anything from a single security-light bulb that needs changing, to being an enormous methamphetamine facility.  "Is unsafe" is similarly vague, especially as applied to older buildings such as the one Plaintiff occupies, that are clearly fit for occupancy.

**B1.    The notice provision for periodic inspections allows for nonconsensual warrantless searches by presuming consent when it does not exist.**

18.    Section 9(c) of the ordinance, entitled "Notice of Inspection and Right to Refuse," delineates the procedures by which Defendant will seek Plaintiff's consent for a warrantless search.

19.    Under Section 9(c), the communications by which Defendant is supposed to secure Plaintiff's consent may be either in person or by United States Mail, at the unfettered discretion of Defendant.

20.    Should said communication occur by mail, Section 9(c)(1) assumes that Plaintiff received it, if mailed 10 days prior to the date of the intended search.

21.    Section 9(c)(4) purports that Plaintiff consents if he does not respond to said communication.

22.    The statute does not include any procedures to address a situation in which Plaintiff did not receive Defendant's request for consent.

23.    In such a situation, Defendant would proceed with a warrantless search which was in actual fact nonconsensual.

24.    It is not unusual for Plaintiff or any other citizen of this University community to be away from home, for holidays or class breaks for foreign study, and therefore unable to receive mail from Defendant, for at least seven to ten days.

25.    Therefore Plaintiff is at risk of a nonconsensual warrantless search every time he leaves home for a week or more.

26.    Any scheme presuming notice or consent by ordinary mail, and not requiring actual consent, would still be unconstitutional. Silence is not consent. Certified mail is often used to ensure actual receipt of a communication but is conspicuously absent from the statutory requirements.

27.    The ongoing threat of nonconsensual warrantless searches is causing Plaintiff pronounced and continuous anxiety.

**B2.    The unconstitutional searches conducted under the fiction of presumed notice, may be premised not in suspicion of the tenant searched, but upon suspicion of other tenants or even the surrounding neighborhood.**

28.    Not only does the ordinance expose tenants to the risk of nonconsensual warrantless searches, it does so on the basis of other people's conduct completely attenuated from the tenant being searched. *See* Subsection 9(b), allowing for searches based on the vague, subjective, and suspiciously discriminatory factors of "the overall condition of the neighborhood" and as a consequence of police calls, without regard to whether the police call pertained to the tenant being searched.

29.    There is a strong constitutional prohibition against blanket and random searches, especially in the home where the privacy interest is at its absolute highest.

**C. The ordinance lacks any legislative standards governing the execution of searches.**

30.    The ordinance lacks any legislative guidance whatsoever, delineating the scope of, subject matter of, or limitations on searches executed pursuant to it.

31.    Without proper legislative guidance, a search of Plaintiff's residence is overwhelmingly likely to violate Plaintiff's privacy far more intrusively than can be justified for a building inspection, or to arbitrarily subject Plaintiff to a more intrusive search than other residents.

32.    The fear of such an carte blanche search, potentially of any space in his home and through any of his personal effects, is presently causing Plaintiff severe mental distress.

33.    Were Defendant to actually execute such a search, the resulting violation of privacy would cause Plaintiff irreparable mental harm.

**D.    The ordinance's scheme for selecting homes to search is unreasonably vague, and devoid of any rational basis.**

34.    The ordinance also subjects Plaintiff to arbitrary searches because its selection provisions, Subsection 9(b), include vague and arbitrary criteria.

35.    Even if some of the individual criteria are constitutionally reasonable, the unreasonable ones are significant enough to suffuse the entire scheme with arbitrariness.

36.    For example, the "overall condition of the neighborhood in which the property is located," criteria (5) is unconstitutionally vague.

37.    Likewise, the relative proportions of each type of housing in the city, criteria (3) under section 9(b), has no perceivable relation to any housing evils.

38.    Particular complaints or police calls about an "area of rental properties", for example noise, or a call for a domestic disturbance, facially encompassed in Subsection 9(b)(2), are irrationally far attenuated from any safety issue even in the rental units

concerned, and provide absolutely no rational basis for a search of other tenants' homes in those same buildings or areas. And there is no rational finding as to why privately owned and occupied structures, including single family homes and condominiums, are not included when they are architecturally indistinguishable from their rental counterparts.

39.    It is manifestly unfair for one tenant to be searched because of another tenant's conduct unrelated to the safety of the innocent tenant's residence, or only because he is a lessee instead of a freeholder.

40.    To the extent Section 10's vague and ambiguous classification system influences, under Subsection 9(b)(4), a home's chance of being searched, the search is irrationally arbitrary. Section 10 is rife with vague and arbitrary language and with respect thereto Plaintiff realleges all the arguments made under Point A, Paragraphs 11-17, of this Complaint.

**WHEREFORE Plaintiff prays the Court to:**

A.    Issue a Temporary Restraining order enjoining Defendant from searching Plaintiff's residence until the Court has occasion to rule on a Preliminary or Permanent Injunction.

B.    Declare the ordinance unconstitutional, whether facially or as applied to Plaintiff.

C.    Permanently enjoin Defendant from executing any searches pursuant to the ordinance.

D.    Award Plaintiff his costs and attorneys' fees under 42 U.S.C. 1988(b).

**Plaintiff requests trial by jury.**

Respectfully submitted,

Robert I. Auler
#0082074
Counsel for Plaintiff

Auler Law Offices, P.C.

202 W. Green Street
Urbana, IL  61801

217 384 3080

aulerlaw@yahoo.com

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

DONALD KRULL

**DEFENDANTS**

CITY OF URBANA

(b) County of Residence of First Listed Plaintiff    Champaign
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

ROBERT I. AULER
AULER LAW OFFICES, P.C.
202 W. GREEN ST. (217) 384-3080
URBANA, IL 61801

Attorneys (If Known)
HOWARD SMALL
ANSEL & SMALL.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):  28 USC 1331

Brief description of cause:  Unconstitutional ordinance of a municipality

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  temp. restraining order

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____ DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD
Robert Auler

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Print

**E-FILED**
Thursday, 27 March, 2008  04:21:41 PM
Clerk, U.S. District Court, ILCD

ORDINANCE NO. 2006-08-109

## AN ORDINANCE ADOPTING A REGISTRATION AND INSPECTION PROGRAM FOR RESIDENTAL PROPERTIES BEING RENTED WITHIN THE CITY OF URBANA, ILLINOIS

**WHEREAS,** the City Council finds there are a growing number of residential rental properties within the City, and that many of these properties are in a declining state of maintenance, and;

**WHEREAS,** inadequate maintenance directly affects the health, life, safety and welfare of the citizens of Urbana and impacts the health and vitality of the surrounding neighborhood and the City as a whole, and;

**WHEREAS,** the City of Urbana promotes the use of community policing efforts and cooperation with property owners and residents to help ensure the safety of the entire community, including residential rental properties, and;

**WHEREAS,** the regular collection and maintenance of accurate, up-to-date information about residential rental properties and the identification of responsible persons for the property who are easily accessible will assist the City in the systematic inspections of these properties to ensure their safety and compliance with relevant property maintenance codes, and;

**WHEREAS,** the City Council, after several public hearings and extensive deliberation, concludes that a rental registration program which includes regular inspections of rental properties, is the most reasonable method of insuring suitable housing, safe and viable neighborhoods and a healthy City,

**NOW, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF URBANA, ILLINOIS,** as follows:

<u>**Section 1. Purpose.**</u> It is the purpose of the City of Urbana Rental Registration and Inspection Program adopted herein to assure that rental housing in the City is maintained in a good, safe, and sanitary condition and does not create a nuisance or blighted conditions to its surroundings. To ensure these conditions and to aid in the enforcement of the Property Maintenance Code, Building Safety Code, Zoning Ordinance, and other relevant provisions of Urbana Code of Ordinances, the City Council hereby establishes this Rental Registration and Inspection Program for all applicable residential rental units within the City.

<u>**Section 2. Scope.**</u> This Ordinance applies to any dwelling unit and its accessory units that are leased as rental units located within the City of Urbana, with the following exceptions:

EXHIBIT A

(1) nursing homes, as defined in the Urbana Zoning Ordinance;
(2) hotels and motels, as defined in the Urbana Zoning Ordinance;
(3) public housing, owned by a governmental agency;
(4) University Certified housing.

**Section 3.  Definitions.**  The following words and phrases, when used in this Ordinance, shall have the meanings respectively ascribed to them in this section, except where the context otherwise requires.

Building Official means the Director of the Community Development Services Department, or his/her authorized designee.

Property Maintenance Code means Article IX of Chapter 5 of the City of Urbana Code of Ordinances, as amended.

Duplex means a building with two (2) Rental Units.

Local Agent means one or more persons who has charge, care, or control of a building in, or part thereof, in which rental units are maintained.

Multi-Family Building means a structure that contains three (3) or more Rental Units.

Owner means one (1) or more persons, jointly, severally or in common, or any organization, in whom is vested all or part of the legal title to property, or all or part of the beneficial ownership and a right to present use and enjoyment of the premises, including a mortgage in possession.  As used herein, an organization shall include a corporation, trust, estate, partnership, association or any other legal or commercial entity. The term shall not include a lessee who previously occupied a rental unit and who is subleasing the unit for the remaining part of his or her lease.

Rental Property means a structure with one or more residential units which are leased for occupancy. However, it does not include property excluded in Section 2.

Rental Agreement means all agreements, written or oral, and rules and regulations embodying the terms and conditions concerning the use and enjoyment of rented premises.  It shall also include subleases.

Rental Unit means one (1) or more rooms in a structure arranged, designed and used as a residence or living quarters by one (1) or more persons who are not its owner(s), and contained within a rental property as defined herein.

Rent, Rented or Rental means any payment made to an Owner or an Owner's agent pursuant to a rental agreement.

2

Single Family Dwelling means a structure with one (1) rental unit

**Section 4.  Registration of Rental Property.**

a)  After the effective date of this Ordinance, it shall be unlawful for any owner, as defined herein, to lease or operate a rental property without registering it with the City of Urbana Building Official and complying with the provisions of this Ordinance, together with other applicable codes and ordinances of the City of Urbana. The registration of rental properties required herein shall expire on the 14th day of October of each year.  However, the fees for 2006 through 2007 shall be prorated according to the effective date of this Ordinance.

b)  No owner shall be allowed to register any property if the owner has outstanding fees or fines due and owing to the City.

c)   Registration may be denied or may be revoked by the Building Official as provided in this Ordinance.  If registration is denied or revoked, the Building Official shall notify the Owner or Owner's Agent, in writing, of the denial and the reasons therefore, pursuant to Section 17 of this Ordinance and provide an opportunity to appeal the decision pursuant to Section 18 of this Ordinance.

**Section 5.  Application Requirements**.  Applications for registration shall be filed with the Community Development Services Department and accompanied by a registration fee as established in the Schedule Fees in Chapter 14 of the Urbana City Code. Such application shall be made at least thirty (30) days prior to the expiration of the registration, and shall include the following information:

a)  Name, street address and telephone number of the owner of the rental unit.
b)  Name, street address, and telephone number of the owner's agent responsible for the management of the premises of the rental unit.
c)  Legal address of the premises.
d)  Number of units in each building within the rental property.
e)  Occupancy as permitted under the Zoning Ordinance, or as specified in the Certificate of Occupancy.
f)  Signed statement of owner and owner's agent indicating that he/she is aware of the City's Building Safety codes and Zoning (occupancy) codes and the legal ramifications for *knowingly* violating said codes.
g)  The name and address of the registered agent, if the Owner is a corporation.
h)  The name and address of the mortgage holder, if there is a mortgage on the Rental Property.
i)  The name and address of any buyer on a Contract for Deed.

**Section 6.  Registration Renewal.**  If there are no changes in ownership or agent representation, renewals of the registration may be made by filling out the Registration Renewal form furnished by the City and paying the appropriate fee.

3

**Section 7.  Changes in Ownership** Within thirty (30) days of any change of ownership of a rental property, the new owner shall reregister the property by filing the registration information and form set forth in Section 5.  There shall be no additional charge for the remaining period of the annual registration.  A change of ownership shall include any change in ownership rights, including execution of a Contract for Deed, whether recorded or not.

**Section 8.  Fees.**

a) It being the goal of the City that the Rental Registration and Inspection Program be self-supporting, the Council shall establish a two-tiered schedule of registration fees: 1) for Single-Family Dwellings and Duplexes , which shall be applied on a per building basis; and 2) for Multi-Family housing, which  shall be applied on a per building and per unit basis. The Building Official shall review income from fees and expenses of this program, and make recommendations to the Council on any appropriate adjustments in the fee schedule.  Fees shall also be set for failure to register, incomplete registration information, failure to register by the due date, and re-inspections of Rental Properties.

b) HUD assisted low-income permanent housing projects for seniors, persons with disabilities, and/or homeless individuals shall be eligible for a waiver of fees by the Building Official.

c) It shall be illegal for any Owner or agent of the Owner to charge a tenant or tenants, a fee greater than the actual pro rata cost of the registration fee and to attribute that greater than actual fee to the City.  Any explicit pass-through of the registration fee must be accurately represented, calculated and communicated to the tenant in order to be effective, regardless of how the fee may be characterized in any lease documents.

**Section 9.  Inspections.**  Both the interior and exterior of properties registered under the Rental Registration and Inspection Program shall be periodically inspected by the City as set forth herein.

a)  The Building Official shall establish a schedule of periodic inspections of Multi-Family, Single Family, and Duplex Rental Units to ensure compliance with this ordinance as well as the property maintenance and building codes contained within Chapter 5 of the City Code and the permitted use and residential occupancy provisions contained within Article 5 of the Urbana Zoning Ordinance.

b)  The inspection schedule for Multi-Family, Single Family, and Duplex Rental Units shall be determined by the following factors:

(1)    By systematic zones throughout the City, as previously established by Administrative Order (see separate published map of Systematic Inspection Zones).

4

(2)    By tenant or neighbor complaints about a particular structure or area of rental properties, and/or as indicated by Fire and Police calls or exterior nuisance complaints about a structure or area.

(3)    By the inspection effort proportionate to the amount of the housing stock in each rental housing type:  multi-family, single-family, and duplex.

(4)    The inspection class assigned to a particular building, pursuant to Section 10 of this Ordinance.

(5)    The overall condition of the neighborhood in which the property is located.

(6)    The frequency of prior inspections and date of most recent inspection of the property.

c)  <u>Notice of Inspection and Right to Refuse</u>.

(1)  ·  Notice of periodic inspections of rental units, pursuant to this Section, shall be given in writing to each owner and each tenant of such rental unit, a minimum of  seven (7) days prior to the inspection.  Such notice shall be presumed to have been received as of the time it was served personally on such person, or if mailed by first class U.S. Mail  ten (10) days prior to the inspection, it will be presumed to have been received at least  seven (7) days prior to the inspection.  In such notice, the tenants may be addressed as "occupants" and one such notice mailed to the address of the rental unit, shall be regarded as notice to all tenants.  Notice to the owner, if mailed, shall be addressed to such owner at the address provided for such Owner in the application to register the Rental Property.

(2)    The notice shall advise that objections to such inspection may be lodged by telephone, fax, or e-mail or in person at the City's Community Development Services Department.

(3)    If any owner or any occupant objects to a periodic inspection, no inspection of the rental unit shall be undertaken without an administrative search warrant issued by a Court of competent jurisdiction, setting forth the general scope of the inspection.

(4)    Failure to reschedule an inspection or respond to a notice of inspection shall be treated as agreement to the date and time of the proposed inspection.  The Owner shall be liable for the cost of re-inspection if the Owner or his/her Agent fails to provide access to the Rental Property as scheduled.  Failure to provide access as scheduled or rescheduled, shall also constitute a violation of this Ordinance.

(5)    The notice and warrant requirements of this sub-section do not apply to inspections conducted pursuant to other parts of the City Code.

**Section 10.  Assignment of Classifications.**  Upon completion of a Rental Property's inspection, the property shall be classified by the Building Official according to the classification system set forth herein.  Property will be considered for reclassification at each subsequent inspection.  However, an inspection shall not be deemed necessary for designation as Class F in sub-section e).

a)  CLASS A - Building has no violations of applicable City Codes. Building inspected as lower priority on regular cycle thereafter.

b)  CLASS B - Building has violations of applicable City Codes and the violations do not pose an immediate threat of danger to the life, health and safety of the occupants of the building. Building inspected on regular cycle thereafter.

c)  CLASS C - Building has violations of applicable City Codes that are in excess of ten in number and/or that affect the overall livability of the building, but do not pose a threat of danger to the life, health or safety of the occupants of the building. Building may be inspected as frequently as every year thereafter.

d)  CLASS D - Building has violations and is either unsafe, contains unsafe equipment, is unfit for human occupancy or is unlawful. Pursuant to the Property Maintenance Code, the Building Official may disallow occupancy of all or a portion of the building until Code violations are corrected.  The Building Official may inspect the property on a regular basis to verify that it remains in compliance with City Codes.

e) CLASS F- Building is not in compliance with the Rental Registration Program and may not be occupied for rental.  Violations leading to a Class F designations are violations: (1)  which render the unit unsuitable for habitation according to the City's Health, Life, Safety and/or Property Maintenance Codes after  notification and reasonable opportunity to remedy such violations; (2) repeated and willful violation of the City's zoning code, including, but not limited to, occupancy requirements; or (3) use of the unit for a criminal purpose, as demonstrated by adjudication of the owner or a tenant for the manufacture , distribution or sale of drugs as set forth and defined by the Illinois Criminal Code.  The Class "F" designation shall be withdrawn when the underlying violation has been remedied, or in the case of subsection 3, there has been a change of ownership in the unit, the subject tenant has been evicted, and/or the owner has taken appropriate steps to prevent the unit from constituting a continuing threat to the public.

f)  CLASS N – New construction within past twenty-four (24) months.  First inspection will occur on the next inspection cycle as lowest priority.

**Section 11.  Publication of Class Listings and Violations.**

a) As a public service and an incentive for improved compliance, the City shall periodically publish a list of properties with their designation pursuant to Section 10 of this Ordinance.  This list shall be considered public information and shall be available upon request as well as posted on the City website.  Listings of pertinent violations for

"Class D" or "Class F" properties shall also be considered public information and available upon request.

b) Any property receiving an "A" classification shall receive a placard suitable for posting on the property. The placard may be publicly displayed until such time as the City changes the classification.

**Section 12. Local Agent Required.** The owner of any rental unit covered by this ordinance shall be available to respond to an emergency on a 24 hour per day basis. This requirement may be met by maintaining an operating business or owner residence within sixty (60) miles of the rental unit, or by use of a local agent who resides within Champaign County or an adjoining county, either of whom can be contacted on a 24 hour per day basis. If a local agent is used, the owner shall provide the City with the name, address, and telephone number of the local agent in addition to owner information. A post office box, mailing address, or long distance 800 numbers shall not be deemed sufficient to meet the provisions of this section.

**Section 13. Safety and Security.** To ensure the safety of all residents of rental properties, every Owner shall:

a) Establish a building and unit security plan, including a key tracking system.

b) Restrict regular access to building and unit keys to occupied Rental Units to the Owner or the Owner's Agent with the exception of owner-occupied rental units which are exempt from this provision. Keys may be issued to vendors and contractors for the purpose of maintenance and repair, but in such cases the Owner or Owner's Agent shall take responsibility for the tracking and prompt return of such keys in order to protect the safety and security of tenants. If keys are lost in the course of maintenance and repair activities, the Owner shall promptly change locks at his/her own expense.

c) Cooperate with the City and its Police Department to address continuing safety issues and crime problems at any rental property. This cooperation shall take the form of at least one meeting with City officials and, if necessary, an inspection of the property to review security and crime issues for formulation of remedies. The resulting security plan may include, but is not limited to, a review of access and security issues, lighting, access to common areas, crime prevention through environmental design (CPTED), neighborhood watch programs, graffiti removal, No Trespass Notices, lease clauses, and such other measures which are appropriate to the individual property and the type of problems at issue.

d) Every Owner or Local Agent of a Multi-Family Building containing twenty (20) or more units shall attend a city-sponsored training about crime

7

prevention at rental properties.  Said training shall be conducted on an as-needed basis by the Urbana Police Department and other relevant City staff.

e) The Urbana Police Department and Community Development Services Department shall compile and provide educational materials to assist Owners and tenants with safety and security concerns.  Such materials may include assistance with developing security plans, model leases, crime prevention information, emergency contact information, etc.

**Section 14.  Occupancy of Rental Units.** Occupancy of residential rental properties shall be restricted and monitored as follows:

a) Every Owner of a Rental Unit subject to this Ordinance, shall inform the tenants, before entering into a Rental Agreement, that no more than one (1) household (as defined in Section II-3 of the Urbana Zoning Ordinance) and three (3) additional unrelated persons (as set forth in Section V-11 of the Urbana Zoning Ordinance) may legally occupy the Rental Unit and shall:

(1) Execute a Rental Agreement Addendum, consistent with the form and content to be provided by the City, clearly stating the legal occupancy limit for the Rental Unit, the Owner's agreement that the Rental Unit has not been offered to be occupied by more than the legal occupancy limit, and the tenants' agreement to allow no more than the occupancy limit to occupy the Rental Unit.   The Addendum shall be signed by the Owner or Owner's Agent and all tenants who will occupy the Rental Unit.

(2) Include as part of the Rental Agreement addendum the relationships of any tenants to each other, excluding children if the number of tenants excluding children exceeds four (4).

(3) Provide a copy of the Rental Agreement Addendum to the Building Official, upon request.

b) If the City provides the Owner with evidence of over occupancy of a unit, the Owner shall take all necessary action to reduce occupancy to the legally allowed limit, including eviction.  Failure to remedy over occupancy shall be considered a willful act and a violation of this Ordinance.

c) Rental Units consisting of the following dwelling unit types:  single family extended group occupancy, duplex extended group occupancy, community living facility, dormitory, hotel or motel, nursing home and bed and breakfast (as defined in Section II-3 of the Urbana Zoning Ordinance), shall be occupied by no more than the maximum occupancy limit specified on the Certificate of Occupancy, as determined by the Building Official.

d) Rental Units consisting of a boarding house or rooming house, as defined in Section II-3 of the Urbana Zoning Ordinance, shall be occupied at any given time by no more than fifteen (15) persons, related or unrelated, or fewer as specified in the Certificate of Occupancy, as determined by the Building Official. Properties so designated shall be leased on a per person basis.

e) The above requirements shall not limit the Owner from restricting occupancy to a lesser level than that defined above.

## Section 15. Violations.

(a)    Violations of this Ordinance shall be punishable by fine of not less than One Hundred and Thirty Five ($135) dollars nor more than Seven Hundred Fifty ($750) dollars for each violation. Each day may constitute a separate and continuing violation. The City may seek remedies which include corrective action or prohibitions as a part of its relief.   In the event of conviction on three (3) or more offenses, the City shall also be entitled to recover its costs and reasonable attorney's fees in addition to fines imposed by the Court.

(b) The Building Official may refuse to register or may revoke the existing registration of any Rental Property which falls within the provisions set forth as the basis of the Class "F" designation in Section 10.  In the event that the Building Official denies or revokes registration of a Rental Property, the tenants of the subject property shall be informed by the City of the decision and of their need to obtain other housing.  An owner, or the Agent of the owner, may appeal a registration denial or revocation according to the provisions of Section 18.

## Section 16. Affirmative Defenses.

(a)   The following shall not be affirmative defenses to a violation of this Ordinance:

(1)    The Owner and/or Owner's Agent did not receive notice, provided that the City issued notice according to the provisions of this Ordinance.

(2)    The Property was inspected and issued a classification pursuant to Section 10 indicative of the City's satisfaction with the state of the property at the time of inspection.

(b)  The following are affirmative defenses to a violation of this Ordinance:

(1)   Full correction of each and every violation charged against the defendant.

(2)    The violation charge has been caused by the current occupant or occupants, and the owner and/or owner's agent has persuasive evidence in support of the defense.

9

(3)    The current occupant(s) has refused entry to the owner or his or her agents to that part of the dwelling or dwelling unit requiring correction, for the purpose of correcting the violation charge.

**Section 17.  Notices.**  Any written notice required to be given to the Owner of a Rental Property under this Ordinance shall be addressed to such Owner at the address provided for such Owner in the application for registration.

**Section 18.  Administrative Appeals.**  An Owner, or Agent of the Owner, may appeal a registration denial or revocation to the Chief Administrative Officer within ten (10) days of the date of written notice to such Owner, or Agent,  of the denial or revocation of registration.  The Appeal must be in writing and state the reasons the Owner or Agent disagrees with the determination to deny registration or the reasons for the revocation. The Chief Administrative Officer shall appoint a Hearing Officer to conduct a hearing and make a determination of whether the denial or revocation should be upheld.  The Hearing Officer shall promptly schedule a hearing at a time and date no later than fourteen (14) days from the date of receipt of the appeal by the Chief Administrative Officer, or at a later date at the request of the Owner/Agent.  The Hearing Officer shall have the power to administer oaths and require the attendance of any City employees. The hearing shall be recorded.  The Hearing Officer shall make written findings of fact and issue a written decision which shall be promptly mailed to the Owner and Agent, if any.

**Section 19.  Performance Review.**  The Community Development Department and the Legal Department of the City shall conduct a thorough and evaluation of this Ordinance eighteen (18) months after its effective date.  The review process shall include public input and comment on the Rental Registration and Inspection Program's strengths, weaknesses and effectiveness.  The Departments shall tender a written report to the Mayor and Council summarizing their findings and recommendations.  This report shall be tendered in a timely manner but not later than three (3) months after the commencement of the review and evaluation process.

**Section 20.  Severability.**  If any section, provision, or part of this Ordinance is held invalid or unconstitutional by a court of competent jurisdiction, the remainder of this ordinance shall remain in full force and effect and the application thereof to other persons, entities, or circumstances shall not be affected thereby.

**Section 21.  Effective Date.**  This Ordinance shall become effective thirty (30) days after it is passed by the City Council and signed into law.

PASSED by the City Council this _____ day of _____, 2007.

AYES:

NAYS:

ABSTAINS:

_____
Phyllis D. Clark, City Clerk


APPROVED by the Mayor this _____ day of _____, 2007.


_____
Laurel Lunt Prussing, Mayor

## CERTIFICATE OF PUBLICATION IN PAMPHLET FORM

I, Phyllis D. Clark, certify that I am the duly elected and acting Municipal Clerk of the City of Urbana, Champaign County, Illinois.

I certify that on the _____ day of _____, 2007, the corporate authorities of the City of Urbana passed and approved Ordinance No. _____, entitled: "**AN ORDINANCE ADOPTING A REGISTRATION PROGRAM FOR RESIDENTAL PROPERTIES BEING RENTED WITHIN THE CITY OF URBANA, ILLINOIS,** which provided by its terms that it should be published in pamphlet form.  The pamphlet form of Ordinance No. _____ was prepared, and a copy of such Ordinance was posted in the Urbana City Building commencing on the _____ day of _____, 2007, and continuing for at least ten (10) days thereafter.  Copies of such Ordinance were also available for public inspection upon request at the Office of the City Clerk.

DATED at Urbana, Illinois, this _____ day of _____, 2007.

12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DONALD KRULL, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE CITY OF URBANA, ILLINOIS, | ) |
| | ) |
|      Defendant. | ) |

### PLAINTIFF'S AFFIDAVIT

DONALD KRULL, being duly sworn upon his oath, does state as follows:

1.    I have lived at 1008 S. Busey #7, Urbana, Illinois, since approximately August 15, 1999.

2.    Since moving to said address I have rented my residence there and continue to do so.

3.    I have a strong sense of privacy.

4.    I would feel violated by a search under the ordinance I am disputing and object to it as an unconstitutional government intrusion into my personal space.

5.    The specter of unconstitutional searches is causing me considerable mental distress and I would feel permanently traumatized by such a search.

Further affiant saith not.


_Donald Krull_
Donald Krull

Sworn and subscribed to before me
this __18__ day of December 2007

Notary Public

OFFICIAL SEAL
JACALYN A. COMPTON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/05/08

Auler Law Offices, P.C.

202 W. Green Street
Urbana, IL  61801

217 384 3080
217 337 3061  facsimile
aulerlaw@yahoo.com