**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| **DONALD KRULL,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil No. 08-2079** |
| | ) | |
| **CITY OF URBANA, ILLINOIS,** | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

### THE ORDINANCE

In 2007, the City of Urbana adopted an Ordinance relating to the registration and inspection of rental properties ("RRI Ordinance"), followed by an Ordinance amending, in part, the RRI Ordinance. The RRI Ordinance was adopted by the City of Urbana as Ordinance No. 2006-08-109 and the amending Ordinance as No. 2007-08-094. The RRI Ordinance was passed by the Urbana City Council on January 16, 2007 and became effective on February 15, 2007. The amending Ordinance was passed and became effective on September 4, 2007. The Ordinances are attached to this Memorandum as Exhibits A and B.

The RRI Ordinance requires owners of rental property to register their rental property with the City of Urbana and to have these rental properties inspected for compliance with the housing, building, zoning and environmental codes and ordinances of the City of Urbana. Such inspections allow the City of Urbana to better promote and maintain safe and viable housing and address issues concerning the health, safety and welfare of its citizens. Illinois municipalities are granted authority under the Illinois Municipal Code to "pass all ordinances and make all rules and regulations proper or necessary, to carry into effect the powers granted to municipalities,

with such fines or penalties as may be deemed proper."  65 ILL. COMP. STAT. 5/1-2-1 (2008).

Section 9 of the RRI Ordinance provides that the exterior and interior of all properties registered under the Ordinance *shall* be periodically inspected by the City.  (Emphasis added). Section 9(b) establishes the factors that shall be used to by the City's Building Official to establish a schedule of periodic inspections of Multi-Family, Single Family and Duplex Rental Units (as defined in the RRI Ordinance, Section 3).  Pursuant to Section 10, once the inspection is complete, the property is classified appropriately into one of five Classes, Class A through Class F, as to the character and quantity of the violations discovered, if any.  If the property is found to have one or more health or life threatening violations or exterior housing code or environmental violations, the City will provide written notice to the owner citing these violations and setting a reinspection date for correcting these violations.

Section 9(c) of the RRI Ordinance requires the City of Urbana to give written notice of the date of inspection to the owner or authorized agent <u>and</u> the tenant of the rental unit.  The Ordinance provides that this notice "shall advise that objections to such inspection may be lodged by telephone, fax, or e-mail or in person at the City's Community Development Services Department.  If any owner or any occupant objects to a periodic inspection, no inspection of the rental unit shall be undertaken without an administrative search warrant issued by a Court of competent jurisdiction, setting forth the general scope of the inspection."  RRI Ordinance, Sections 9(c)(2) and (c)(3).

## <u>PLAINTIFF'S FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>

In consideration of a Motion to Dismiss, the Court must consider all well-pled facts as true and must draw all inferences in favor of the non-moving party.  <u>Bontkowski v. First Nat.</u>

Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993).  Courts should grant a Motion to Dismiss

only if it is beyond doubt that no set of facts would entitle Plaintiff to relief.  Venture Associates

Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 432 (7th Cir. 1993).

   "A facial challenge to a legislative act is, of course, the most difficult challenge to mount

successfully, since the challenger must establish that no set of circumstances exists under which

the Act would be valid."  U.S. v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100 (1987).

When considering such validity, the Court "must not be guided by a single sentence or member

of a sentence, but look to the provisions of the whole law."  Pollard v. E.I. du Pont de Nemours

& Co., 532 U.S. 843, 852, 121 S.Ct. 1946, 1951 (2001) citing Gade v. National Solid Wastes

Management Assn., 505 U.S. 88, 99 (1992).

   In Section B1, and specifically Paragraph 23 of the Complaint, Plaintiff alleges the City's

notice provision allows for warrantless searches when the search is "in actual fact

nonconsensual" unless the City of Urbana is enjoined from enforcing its RRI Ordinance.

However, Section 9(c)(3) clearly states that "no inspection of a rental unit shall be undertaken

without an administrative search warrant issued by a Court of competent jurisdiction" when the

owner or any of the occupants object to the inspection.  Both the owner and the occupants of the

rental unit have the right to object to the inspection and may communicate that objection to the

City by telephone, fax, e-mail or in person.  Furthermore, the notice of inspection must advise

the owner and occupants of such a right to object to the inspection and how to respond to the

notice.  Clearly, consent under these circumstances is not involuntary.

   The leading case in this area is Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727,

19 L.Ed.2d 930 (1976).  In Camara, the Plaintiff sued to enjoin prosecution for violation of a

housing code, which was filed because Plaintiff refused to consent to an inspection of his

property. The Supreme Court held that when a tenant does not consent to the inspection, the City must obtain a search warrant before conducting an administrative search or inspection.  Id. at 539-540.  Note that an exception to securing a warrant may arise when there is probable cause and exigent circumstances to prevent securing a search warrant beforehand, but this issue is not a subject of this litigation.  See U.S. v. Arch, 7 F.3d 1300 (7th Cir. 1993).

The City of Urbana has incorporated such a warrant requirement into the inspection procedure of the RRI Ordinance.  Furthermore, the RRI Ordinance requires the City to inspect and as such must be read to require the City to seek a warrant to inspect when refused consent. See the RRI Ordinance, Section 9: "Both the interior and exterior of properties…shall be periodically inspected by the City." [Emphasis added.]  The Court followed this same interpretation in Tobin v. City of Peoria, Ill., 939 F.Supp. 628, 634 (C.D. Ill. 1996), where the Court found that the City of Peoria fulfilled the warrant requirement established in Camara.  As a result, the Tobin Court granted the City's Motion to Dismiss because the ordinance was facially valid and avoided any unconstitutional application.  Similarly, the Court in Black v. Village of Park Forest, 20 F.Supp.2d 1218, 1223 (N.D. Ill. 1998) agreed that the Village's warrant requirement procedure "may be constitutionally applied in some circumstance, satisfying the lenient standard announced in Salerno for repelling a facial challenge" and granted the Village's Motion for Summary Judgment.

Without the implementation of a proper warrant requirement, the Camara Court held that administrative searches for housing code violations are significant intrusions upon the interests protected by the Fourth Amendment.  Camara 387 U.S. at 534.  Courts have found inspection ordinances unconstitutional when property owners are forced to choose between consenting to a warrantless search or face a criminal penalty.  Tobin, 939 F.Supp. at 633 citing Sokolov v.

4

<u>Village of Freeport</u>, 438 N.Y.S.2d 257, 260-261, 420 N.E.2d 55, 58-59 (1981); <u>Pashcow v. Town of Babylon</u>, 96 Misc.2d 1036, 410 N.Y.S.2d 192, 193-94 (1976); <u>Wilson v. City of Cincinnati</u>, 46 Ohio St.2d 138, 346 N.E.2d 666, 670 (1976).  As such, <u>Camara</u> requires consent or a warrant for a valid administrative search to occur.  <u>Camara</u>, 387 U.S. at 532-534.  A warrant was held to be preferable to prosecution for failure to consent to an inspection because:

> The occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization... Yet, only by refusing entry and risking a criminal conviction can the occupant at present challenge the inspector's decision to search.  <u>Id.</u> at 532.

The <u>Camara</u> Court acknowledged the strong governmental interest in inspecting for housing code violations:

> The primary governmental interest at stake is to prevent even the unintentional development of conditions, which are hazardous to public health and safety.  There is unanimous agreement among those most familiar with this field that the only effective way to seek universal compliance with minimum standards required by municipal codes is through routine periodic inspections of all structures. <u>Id.</u> at 535-536.

The Court went on to say, " 'probable cause' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling."  <u>Id.</u> at 538-540.  Reasonable legislative or administrative standards may vary depending on the municipality's registration and inspection program and "may be based upon the passage of time, the nature of the building (e.g. a multifamily apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling."  <u>Id.</u> at 538.  Therefore, administrative searches must meet a lesser requirement of reasonableness as opposed to the quantum of

evidence necessary for a search warrant.  Black, 20 F.Supp.2d at 1225 citing Griffin v.

Wisconsin, 483 U.S. 868, 877 n. 4 (1987).

The Camara Court set the standard for obtaining a warrant to search for housing code

violations. The Court acknowledged that a health official,

> Need not show the same kind of proof to a magistrate to obtain a warrant as one
> who would search for the fruits or instrumentalities of crime. … Reasonableness
> is still the ultimate standard. If a valid public interest justifies the intrusion
> contemplated, then there is probable cause to issue a suitable restricted search
> warrant. Camara, 387 U.S. at 538-539,

Overall, Camara balanced the need for a search against the invasion that the search entails.  Id. at

537.  The Supreme Court found three persuasive factors, as reiterated by the Black Court, in

approving of such municipal rental inspection ordinances:

> First, code-enforcement programs have a long history of judicial and public
> acceptance.  Second, there is a strong public interest in preventing dangerous
> conditions and it is doubtful that any other canvassing technique would achieve
> acceptable results.  Third, because the inspections are neither personal in nature
> nor aimed at the discovery of evidence of crime, they involve a relatively limited
> invasion of the urban citizen's privacy.  Black, 20 F.Supp.2d 1227 citing Camara,
> 387 at 537. [Quotations omitted.]

The City of Urbana's RRI Ordinance should be construed in light of Camara v.

Municipal Court. The notice provision (RRI Ordinance, Section 9(c)) does provide that the

landlord and tenant have a right to refuse to consent to an inspection.  It further provides that the

landlord and tenant be advised that the City has a right to seek a warrant.  The warrant would

obviously be sought upon the terms set forth in Camara.  Having set forth that the landlord and

tenant have a right to refuse to consent to an inspection, the City would be violating its own

Ordinance if it then prosecuted the individual for failing to have an inspected premises. There is

nothing in or outside the record that would lead a reasonable person to believe that the City

would prosecute under such circumstances instead of seeking a search warrant.

In Hometown Co-op. Apartments v. City of Hometown, 515 F.Supp. 502 (N.D. Ill. 1981), an ordinance similar to Urbana's was held constitutional. Again, there was a provision for seeking a warrant in the Hometown ordinance. Said the Court,

> By providing for a warrant procedure in cases in which a new owner or lessee of property refuses to consent to an inspection by the building department, the City of Hometown has remedied the fatal flaw in its earlier point of sale inspection ordinance. The property owner is no longer forced to choose between consenting to a warrantless search or [sic] subjecting himself or herself to substantial fines for failure to procure a certificate of inspection. Id. at 504.

The Hometown case is also significant and applicable to the case at bar because the plaintiffs in Hometown argued that the ordinance still had the effect of coercing involuntary consent to a warrantless search in situations in which the City either refused to procure a warrant or could not procure a warrant consistent with the reasonable cause standard set forth in Camara. The Court held, "This speculation and conjecture as to possible future events is inappropriate at this time." Id. at 504.

## LACK OF RIPENESS FOR ADJUDICATION

In order to present a justiciable case or controversy ripe for judicial decision, there must be a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract. Tobin, 939 F.Supp. at 634 citing Hometown, 515 F.Supp. at 504. "Cases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." Hinrichs v. Whitburn, 975 F.2d 1329, 1333 (7th Cir. 1992). "The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what

effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Tobin, 939 F.Supp. at 634 citing Peick v. Pension Ben. Guar. Corp., 724 F.2d 1247, 1261 (7th Cir. 1983).

In the case at bar, the Plaintiff does not allege that the City of Urbana has refused to seek a warrant or has been unsuccessful in seeking a warrant related to the Plaintiff. Given the standard for obtaining a search warrant of this type, it is speculative indeed to contemplate that the City would prosecute the Plaintiff if it were unable to obtain a warrant, making this matter before the Court not ripe because no "impending" injury is presented. Virtually the only way a warrant would be denied would be if a Court were to hold that the legislative scheme of inspections as flawed. In that case, it is highly unlikely that the City of Urbana would proceed to prosecute Plaintiff in the same Court that would have already held that the scheme was flawed. The purely contingent possibility of injury to Plaintiff is insufficient to render the RRI Ordinance unconstitutional because the alleged injury is not immediate or real.

## LACK OF STANDING FOR ADJUDICATION

The party seeking to invoke federal jurisdiction has the burden of establishing that it meets the requirements of standing. DH2, Inc. v. S.E.C., 422 F.3d 591, 596 (7th Cir. 2005). The standing requirements under Article III of the Constitution are well settled: "injury in fact, a causal connection between the injury and the defendant's conduct, and likely redressability through a favorable decision." Winkler v. Gates, 481 F.3d 977, 979 (7th Cir. 2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-61 (1992)). Prudential standing, on the other hand, "embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.' " Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (quoting Allen v. Wright, 468 U.S. 737,

751 (1984)).  United States Supreme Court has stated that, "Prudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.' " Id. (quoting Allen, 468 U.S. at 751).

Again, Plaintiff does not allege that the City of Urbana has refused to seek a warrant or has been unsuccessful in seeking a warrant related to the Plaintiff.  The purely speculative possibility of injury to Plaintiff is insufficient to commence adjudication to render the RRI Ordinance unconstitutional because no injury has been alleged because Plaintiff has not suffered any injury in fact.

## CONCLUSION

The Defendant, City of Urbana, prays that the Court conclude that the RRI Ordinance is not unconstitutional and does not violate the Fourth Amendment restriction against unreasonable searches and seizures.  Defendant further prays that the Court determine there is no allegation in Plaintiff's Complaint that the RRI Ordinance has been applied in any unconstitutional manner as to the Plaintiff and, consequently, the matter is not ripe for decision by this Court.  Therefore, Defendant, City of Urbana, prays that the Court dismiss the Complaint and for such other and further relief as the Court deems just.

Respectfully submitted,

CITY OF URBANA, ILLINOIS,
Defendant

By: /s/ Joseph P. Chamley_____
JOSEPH P. CHAMLEY

EVANS, FROEHLICH, BETH & CHAMLEY
44 Main Street, Suite 310
Champaign, IL  61820
PH:  (217) 359-6494
FX:  (217) 359-6468
jchamley@efbclaw.com

- and -

By: /s/ Mark C. Palmer_____
MARK C. PALMER
EVANS, FROEHLICH, BETH & CHAMLEY
44 Main Street, Suite 310
Champaign, IL  61820
PH:  (217) 359-6494
FX:  (217) 359-6468
mpalmer@efbclaw.com

## CERTIFICATE OF SERVICE

I, Mark C. Palmer, attorney for the Defendant, City of Urbana, Illinois, hereby certify that on April 17, 2008, I caused a copy of the foregoing document to be filed electronically with the Clerk of the Court:

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS**

Notice of this filing will be sent by operation of the Court's CM/ECF electronic filing system to:

Robert I. Auler, Attorney for the Plaintiff          aulerlaw@yahoo.com

s/ Mark C. Palmer_____
MARK C. PALMER, One of Its Attorneys
Evans, Froehlich, Beth & Chamley
44 East Main Street, Suite 310
Champaign, IL  61820
PH:  (217) 359-6494
FX:  (217) 359-6468
mpalmer@efbclaw.com


E-FILED
Thursday, 17 April 2008 04:22:07 PM
Clerk, U.S. District Court, ILCD

ORDINANCE NO.   2006-08-109

# AN ORDINANCE TO ESTABLISH A RENTAL REGISTRATION PROGRAM FOR RESIDENTIAL PROPERTY WITHIN THE CITY OF URBANA

WHEREAS, the City Council finds there are a growing number of residential rental properties within the City, and that many of these properties are in a declining state of maintenance; and

WHEREAS, inadequate maintenance directly affects the health, life, safety and welfare of the citizens of Urbana and impacts the health and vitality of the surrounding neighborhood and the City as a whole; and

WHEREAS, the City of Urbana promotes the use of community policing efforts and cooperation with property owners and residents to help ensure the safety of the entire community, including residential rental properties; and

WHEREAS, the regular collection and maintenance of accurate, up-to-date information about residential rental properties and the identification of responsible persons for the property who are easily accessible will assist the City in the systematic inspections of these properties to ensure their safety and compliance with relevant property maintenance codes; and

WHEREAS, the City Council, after several public hearings and extensive deliberation, concludes that a rental registration program which includes regular inspections of rental properties, is the most reasonable method of insuring suitable housing, safe and viable neighborhoods and a healthy City.

NOW, THEREFORE, BE IT ORDAINED BY THE COUNCIL OF THE CITY OF URBANA, ILLINOIS, as follows:

Section 1.  **Purpose**.  It is the purpose of the City of Urbana Rental Registration and Inspection Program adopted herein to assure that rental housing in the City is maintained in a good, safe, and sanitary condition and does not create a nuisance or blighted conditions to its surroundings. To ensure these conditions and to aid in the enforcement of the Property Maintenance Code, Building Safety Code, Zoning Ordinance, and other relevant



provisions of Urbana Code of Ordinances, the City Council hereby establishes this Rental Registration and Inspection Program for all applicable residential rental units within the City.

Section 2. **Scope.** This Ordinance applies to any dwelling unit and its accessory units that are leased as rental units located within the City of Urbana, with the following exceptions:

(1) Nursing homes, as defined in the Urbana Zoning Ordinance;

(2) Hotels and motels, as defined in the Urbana Zoning Ordinance;

(3) Public housing, owned by a governmental agency;

(4) University Certified housing.

Section 3. **Definitions.** The following words and phrases, when used in this Ordinance, shall have the meanings respectively ascribed to them in this section, except where the context otherwise requires.

Building Official means the Director of the Community Development Services Department, or his/her authorized designee.

Property Maintenance Code means Article IX of Chapter 5 of the City of Urbana Code of Ordinances, as amended.

Duplex means a building with two (2) Rental Units.

Local Agent means one or more persons who has charge, care, or control of a building in, or part thereof, in which rental units are maintained.

Multi-Family Building means a structure that contains three (3) or more Rental Units.

Owner means one (1) or more persons, jointly, severally or in common, or any organization, in whom is vested all or part of the legal title to property, or all or part of the beneficial ownership and a right to present use and enjoyment of the premises, including a mortgage in possession. As used herein, an organization shall include a corporation, trust, estate, partnership, association or any other legal or commercial entity. The term shall not include a lessee who previously occupied a rental unit and who is subleasing the unit for the remaining part of his or her lease.

Rental Property means a structure with one or more residential units which are leased for occupancy. However, it does not include property excluded in Section 2.



Rental Agreement means all agreements, written or oral, and rules and regulations embodying the terms and conditions concerning the use and enjoyment of rented premises. It shall also include subleases.

Rental Unit means one (1) or more rooms in a structure arranged, designed and used as a residence or living quarters by one (1) or more persons who are not its owner(s), and contained within a rental property as defined herein.

Rent, Rented or Rental means any payment made to an Owner or an Owner's agent pursuant to a rental agreement.

Single Family Dwelling means a structure with one (1) rental unit

**Section 4. Registration of Rental Property.**

a)   After the effective date of this Ordinance, it shall be unlawful for any owner, as defined herein, to lease or operate a rental property without registering it with the City of Urbana Building Official and complying with the provisions of this Ordinance, together with other applicable codes and ordinances of the City of Urbana. The registration of rental properties required herein shall expire on the 14th day of October of each year. However, the fees for 2006 through 2007 shall be prorated according to the effective date of this Ordinance.

b)   No owner shall be allowed to register any property if the owner has outstanding fees or fines due and owing to the City.

c)   Registration may be denied or may be revoked by the Building Official as provided in this Ordinance. If registration is denied or revoked, the Building Official shall notify the Owner or Owner's Agent, in writing, of the denial and the reasons therefore, pursuant to Section 17 of this Ordinance and provide an opportunity to appeal the decision pursuant to Section 18 of this Ordinance.

**Section 5. Application Requirements.** Applications for registration shall be filed with the Community Development Services Department and accompanied by a registration fee as established in the Schedule Fees in Chapter 14 of the Urbana City Code. Such application shall be made at least thirty (30) days prior to the expiration of the registration, and shall include the following information:

a)   Name, street address and telephone number of the owner of the rental unit.

COPY

b)    Name, street address, and telephone number of the owner's agent responsible for the management of the premises of the rental unit.

c)    Legal address of the premises.

d)    Number of units in each building within the rental property.

e)    Occupancy as permitted under the Zoning Ordinance, or as specified in the Certificate of Occupancy.

f)    Signed statement of owner and owner's agent indicating that he/she is aware of the City's Building Safety codes and Zoning (occupancy) codes and the legal ramifications for *knowingly* violating said codes.

g)    The name and address of the registered agent, if the Owner is a corporation.

h)    The name and address of the mortgage holder, if there is a mortgage on the Rental Property.

i)    The name and address of any buyer on a Contract for Deed.

Section 6. **Registration Renewal.** If there are no changes in ownership or agent representation, renewals of the registration may be made by filling out the Registration Renewal form furnished by the City and paying the appropriate fee.

Section 7. **Changes in Ownership.** Within thirty (30) days of any change of ownership of a rental property, the new owner shall reregister the property by filing the registration information and form set forth in Section 5. There shall be no additional charge for the remaining period of the annual registration. A change of ownership shall include any change in ownership rights, including execution of a Contract for Deed, whether recorded or not.

Section 8. **Fees.**

a)    It being the goal of the City that the Rental Registration and Inspection Program be self-supporting, the Council shall establish a two-tiered schedule of registration fees: 1) for Single-Family Dwellings and Duplexes , which shall be applied on a per building basis; and 2) for Multi-Family housing, which  shall be applied on a per building and per



unit basis. The Building Official shall review income
from fees and expenses of this program, and make
recommendations to the Council on any appropriate
adjustments in the fee schedule. Fees shall also be
set for failure to register, incomplete registration
information, failure to register by the due date, and
re-inspections of Rental Properties.

b)   HUD assisted low-income permanent housing projects
     for seniors, persons with disabilities, and/or
     homeless individuals shall be eligible for a waiver
     of fees by the Building Official.

c)   It shall be illegal for any Owner or agent of the
     Owner to charge a tenant or tenants, a fee greater
     than the actual pro rata cost of the registration fee
     and to attribute that greater than actual fee to the
     City. Any explicit pass-through of the registration
     fee must be accurately represented, calculated and
     communicated to the tenant in order to be effective,
     regardless of how the fee may be characterized in any
     lease documents.

Section 9. **Inspections.** Both the interior and exterior of properties

registered under the Rental Registration and Inspection Program shall be

periodically inspected by the City as set forth herein.

a)   The Building Official shall establish a schedule of
     periodic inspections of Multi-Family, Single Family,
     and Duplex Rental Units to ensure compliance with
     this ordinance as well as the property maintenance
     and building codes contained within Chapter 5 of the
     City Code and the permitted use and residential
     occupancy provisions contained within Article 5 of
     the Urbana Zoning Ordinance.

b)   The inspection schedule for Multi-Family, Single
     Family, and Duplex Rental Units shall be determined
     by the following factors:

     (1)   By systematic zones throughout the City,
           as previously established by
           Administrative Order (see separate
           published map of Systematic Inspection
           Zones).

     (2)   By tenant or neighbor complaints about a
           particular structure or area of rental
           properties, and/or as indicated by Fire
           and Police calls or exterior nuisance
           complaints about a structure or area.

     (3)   By the inspection effort proportionate to
           the amount of the housing stock in each
           rental housing type: multi-family,
           single-family, and duplex.



**COPY**

(4) The inspection class assigned to a particular building, pursuant to Section 10 of this Ordinance.

(5) The overall condition of the neighborhood in which the property is located.

(6) The frequency of prior inspections and date of most recent inspection of the property.

c) <u>Notice of Inspection and Right to Refuse</u>.

(1) Notice of periodic inspections of rental units, pursuant to this Section, shall be given in writing to each owner and each tenant of such rental unit, a minimum of seven (7) days prior to the inspection. Such notice shall be presumed to have been received as of the time it was served personally on such person, or if mailed by first class U.S. Mail ten (10) days prior to the inspection, it will be presumed to have been received at least seven (7) days prior to the inspection. In such notice, the tenants may be addressed as "occupants" and one such notice mailed to the address of the rental unit, shall be regarded as notice to all tenants. Notice to the owner, if mailed, shall be addressed to such owner at the address provided for such Owner in the application to register the Rental Property.

(2) The notice shall advise that objections to such inspection may be lodged by telephone, fax, or e-mail or in person at the City's Community Development Services Department.

(3) If any owner or any occupant objects to a periodic inspection, no inspection of the rental unit shall be undertaken without an administrative search warrant issued by a Court of competent jurisdiction, setting forth the general scope of the inspection.

(4) Failure to reschedule an inspection or respond to a notice of inspection shall be treated as agreement to the date and time of the proposed inspection. The Owner shall be liable for the cost of re-inspection if the Owner or his/her Agent fails to provide access to the Rental Property as scheduled. Failure to provide access as scheduled or



rescheduled, shall also constitute a
violation of this Ordinance.

(5)    The notice and warrant requirements of
this sub-section do not apply to
inspections conducted pursuant to other
parts of the City Code.

Section 10. **Assignment of Classifications.**  Upon completion of a Rental

Property's inspection, the property shall be classified by the Building

Official according to the classification system set forth herein.  Property

will be considered for reclassification at each subsequent inspection.

However, an inspection shall not be deemed necessary for designation as Class

F in sub-section e).

a)    CLASS A - Building has no violations of applicable
City Codes. Building inspected as lower priority on
regular cycle thereafter.

b)    CLASS B - Building has violations of applicable City
Codes and the violations do not pose an immediate
threat of danger to the life, health and safety of
the occupants of the building. Building inspected on
regular cycle thereafter.

c)    CLASS C - Building has violations of applicable City
Codes that are in excess of ten in number and/or that
affect the overall livability of the building, but do
not pose a threat of danger to the life, health or
safety of the occupants of the building. Building may
be inspected as frequently as every year thereafter.

d)    CLASS D - Building has violations and is either
unsafe, contains unsafe equipment, is unfit for human
occupancy or is unlawful. Pursuant to the Property
Maintenance Code, the Building Official may disallow
occupancy of all or a portion of the building until
Code violations are corrected.  The Building Official
may inspect the property on a regular basis to verify
that it remains in compliance with City Codes.

e)    CLASS F- Building is not in compliance with the
Rental Registration Program and may not be occupied
for rental.  Violations leading to a Class F
designations are violations: (1)  which render the
unit unsuitable for habitation according to the
City's Health, Life, Safety and/or Property
Maintenance Codes after  notification and reasonable
opportunity to remedy such violations; (2) repeated
and willful violation of the City's zoning code,
including, but not limited to, occupancy
requirements; or (3) use of the unit for a criminal
purpose, as demonstrated by adjudication of the owner
or a tenant for the manufacture , distribution or



sale of drugs as set forth and defined by the Illinois Criminal Code. The Class "F" designation shall be withdrawn when the underlying violation has been remedied, or in the case of subsection 3, there has been a change of ownership in the unit, the subject tenant has been evicted, and/or the owner has taken appropriate steps to prevent the unit from constituting a continuing threat to the public.

f)  CLASS N - New construction within past twenty-four (24) months. First inspection will occur on the next inspection cycle as lowest priority.

Section 11. **Publication of Class Listings and Violations.**

a)  As a public service and an incentive for improved compliance, the City shall periodically publish a list of properties with their designation pursuant to Section 10 of this Ordinance. This list shall be considered public information and shall be available upon request as well as posted on the City website. Listings of pertinent violations for "Class D" or "Class F" properties shall also be considered public information and available upon request.

b)  Any property receiving an "A" classification shall receive a placard suitable for posting on the property. The placard may be publicly displayed until such time as the City changes the classification.

Section 12. **Local Agent Required.** The owner of any rental unit covered by this ordinance shall be available to respond to an emergency on a 24 hour per day basis. This requirement may be met by maintaining an operating business or owner residence within sixty (60) miles of the rental unit, or by use of a local agent who resides within Champaign County or an adjoining county, either of whom can be contacted on a 24 hour per day basis. If a local agent is used, the owner shall provide the City with the name, address, and telephone number of the local agent in addition to owner information. A post office box, mailing address, or long distance 800 numbers shall not be deemed sufficient to meet the provisions of this section.

Section 13. **Safety and Security.** To ensure the safety of all residents of rental properties, every Owner shall:

a)  Establish a building and unit security plan, including a key tracking system.



b)    Restrict regular access to building and unit keys to
occupied Rental Units to the Owner or the Owner's
Agent with the exception of owner-occupied rental
units which are exempt from this provision.  Keys may
be issued to vendors and contractors for the purpose
of maintenance and repair, but in such cases the
Owner or Owner's Agent shall take responsibility for
the tracking and prompt return of such keys in order
to protect the safety and security of tenants.  If
keys are lost in the course of maintenance and repair
activities, the Owner shall promptly change locks at
his/her own expense.

c)    Cooperate with the City and its Police Department to
address continuing safety issues and crime problems
at any rental property.  This cooperation shall take
the form of at least one meeting with City officials
and, if necessary, an inspection of the property to
review security and crime issues for formulation of
remedies.  The resulting security plan may include,
but is not limited to, a review of access and
security issues, lighting, access to common areas,
crime prevention through environmental design
(CPTED), neighborhood watch programs, graffiti
removal, No Trespass Notices, lease clauses, and such
other measures which are appropriate to the
individual property and the type of problems at
issue.

d)    Every Owner or Local Agent of a Multi-Family Building
containing twenty (20) or more units shall attend a
city-sponsored training about crime prevention at
rental properties.  Said training shall be conducted
on an as-needed basis by the Urbana Police Department
and other relevant City staff.

e)    The Urbana Police Department and Community
Development Services Department shall compile and
provide educational materials to assist Owners and
tenants with safety and security concerns.  Such
materials may include assistance with developing
security plans, model leases, crime prevention
information, emergency contact information, etc.

**Section 14. Occupancy of Rental Units.**  Occupancy of residential

rental properties shall be restricted and monitored as follows:

a)    Every Owner of a Rental Unit subject to this
Ordinance, shall inform the tenants, before entering
into a Rental Agreement, that no more than one (1)
household (as defined in Section II-3 of the Urbana
Zoning Ordinance) and three (3) additional unrelated
persons (as set forth in Section V-11 of the Urbana
Zoning Ordinance) may legally occupy the Rental Unit
and shall:



(1) Execute a Rental Agreement Addendum,
consistent with the form and content to
be provided by the City, clearly stating
the legal occupancy limit for the Rental
Unit, the Owner's agreement that the
Rental Unit has not been offered to be
occupied by more than the legal occupancy
limit, and the tenants' agreement to
allow no more than the occupancy limit to
occupy the Rental Unit.    The Addendum
shall be signed by the Owner or Owner's
Agent and all tenants who will occupy the
Rental Unit.

(2) Include as part of the Rental Agreement
addendum the relationships of any tenants
to each other, excluding children if the
number of tenants excluding children
exceeds four (4).

(3) Provide a copy of the Rental Agreement
Addendum to the Building Official, upon
request.

b) If the City provides the Owner with evidence of over
occupancy of a unit, the Owner shall take all
necessary action to reduce occupancy to the legally
allowed limit, including eviction.    Failure to remedy
over occupancy shall be considered a willful act and
a violation of this Ordinance.

c) Rental Units consisting of the following dwelling
unit types:    single family extended group occupancy,
duplex extended group occupancy, community living
facility, dormitory, hotel or motel, nursing home and
bed and breakfast (as defined in Section II-3 of the
Urbana Zoning Ordinance), shall be occupied by no
more than the maximum occupancy limit specified on
the Certificate of Occupancy, as determined by the
Building Official.

d) Rental Units consisting of a boarding house or
rooming house, as defined in Section II-3 of the
Urbana Zoning Ordinance, shall be occupied at any
given time by no more than fifteen (15) persons,
related or unrelated, or fewer as specified in the
Certificate of Occupancy, as determined by the
Building Official.    Properties so designated shall be
leased on a per person basis.

e) The above requirements shall not limit the Owner from
restricting occupancy to a lesser level than that
defined above.

**Section 15. Violations.**

a) Violations of this Ordinance shall be punishable by
fine of not less than One Hundred and Thirty Five
($135) dollars nor more than Seven Hundred Fifty



($750) dollars for each violation.  Each day may constitute a separate and continuing violation.  The City may seek remedies which include corrective action or prohibitions as a part of its relief.   In the event of conviction on three (3) or more offenses, the City shall also be entitled to recover its costs and reasonable attorney's fees in addition to fines imposed by the Court.

b)   The Building Official may refuse to register or may revoke the existing registration of any Rental Property which falls within the provisions set forth as the basis of the Class "F" designation in Section 10.   In the event that the Building Official denies or revokes registration of a Rental Property, the tenants of the subject property shall be informed by the City of the decision and of their need to obtain other housing.  An owner, or the Agent of the owner, may appeal a registration denial or revocation according to the provisions of Section 18.

Section 16.  **Affirmative Defenses.**

a)   The following shall not be affirmative defenses to a violation of this Ordinance:

(1)   The Owner and/or Owner's Agent did not receive notice, provided that the City issued notice according to the provisions of this Ordinance.

(2)   The Property was inspected and issued a classification pursuant to Section 10 indicative of the City's satisfaction with the state of the property at the time of inspection.

b)   The following are affirmative defenses to a violation of this Ordinance:

(1)   Full correction of each and every violation charged against the defendant.

(2)   The violation charge has been caused by the current occupant or occupants, and the owner and/or owner's agent has persuasive evidence in support of the defense.

(3)   The current occupant(s) has refused entry to the owner or his or her agents to that part of the dwelling or dwelling unit requiring correction, for the purpose of correcting the violation charge.

Section 17.  **Notices.**  Any written notice required to be given to the Owner of a Rental Property under this Ordinance shall be addressed to such



Owner at the address provided for such Owner in the application for registration.

Section 18. **Administrative Appeals**.  An Owner, or Agent of the Owner, may appeal a registration denial or revocation to the Chief Administrative Officer within ten (10) days of the date of written notice to such Owner, or Agent, of the denial or revocation of registration.  The Appeal must be in writing and state the reasons the Owner or Agent disagrees with the determination to deny registration or the reasons for the revocation.  The Chief Administrative Officer shall appoint a Hearing Officer to conduct a hearing and make a determination of whether the denial or revocation should be upheld.  The Hearing Officer shall promptly schedule a hearing at a time and date no later than fourteen (14) days from the date of receipt of the appeal by the Chief Administrative Officer, or at a later date at the request of the Owner/Agent.  The Hearing Officer shall have the power to administer oaths and require the attendance of any City employees.  The hearing shall be recorded.  The Hearing Officer shall make written findings of fact and issue a written decision which shall be promptly mailed to the Owner and Agent, if any.

Section 19. **Performance Review**.  The Community Development Department and the Legal Department of the City shall conduct a thorough and evaluation of this Ordinance eighteen (18) months after its effective date.  The review process shall include public input and comment on the Rental Registration and Inspection Program's strengths, weaknesses and effectiveness.  The Departments shall tender a written report to the Mayor and Council summarizing their findings and recommendations.  This report shall be tendered in a timely manner but not later than three (3) months after the commencement of the review and evaluation process.

Section 20. **Severability**.  If any section, provision, or part of this Ordinance is held invalid or unconstitutional by a court of competent jurisdiction, the remainder of this ordinance shall remain in full force and

effect and the application thereof to other persons, entities, or circumstances shall not be affected thereby.

Section 21. **Effective Date.** This Ordinance shall become effective thirty (30) days after it is passed by the City Council and signed into law

PASSED by the City Council this __16th__ day of _____January_____, __2007__.

AYES:          Barnes, Bowersox, Lewis, Roberts, Smyth

NAYS:          Stevenson

ABSTAINS:

Phyllis D. Clark, City Clerk

APPROVED by the Mayor this __23rd__ day of _____January_____, __2007__.

Laurel Lunt Prussing, Mayor
Danielle Chynoweth, Mayor Pro-tem



E-FILED
Thursday, 17 April, 2008 04:22:50 PM
Clerk, U.S. District Court, ILCD

ORDINANCE NO.   2007-08-094

## AN ORDINANCE AMENDING THE CODE OF ORDINANCES OF THE CITY OF URBANA, ILLINOIS, REGARDING THE RENTAL REGISTRATION PROGRAM FOR RESIDENTIAL PROPERTY AND THE SCHEDULE OF FEES

WHEREAS, the Mayor and City Council have heretofore adopted ordinances establishing a rental registration program for residential property and a Schedule of Fees; and

WHEREAS, the Mayor and City Council find that the best interests of the City are served by amending said ordinances.

NOW, THEREFORE, BE IT ORDAINED by the Mayor and the City Council of the City of Urbana, Champaign County, Illinois, as follows:

Section 1.   The Code of Ordinances, City of Urbana, Chapter 14, "Licenses and Permits," Section 14-7, "Schedule of Fees," Subsection B(11) is hereby amended and shall read as follows:

11.   Annual Rental Property Registration Fees:

(a)   Single Family – Per Building . . . . . . . . . . $45.00

(b)   Duplexes – Per Building . . . . . . . . . . . $50.00

(c)   Multi-Family (3 + Units) Per Building . . . . . $40.00

(d)   Additional Fee Per Multi-Family Unit . . . . . . $10.00

(e)   Late Registration . . . . . . . . . . . . . . $50.00

(f)   Incomplete Registration Information . . . . . . $50.00

(g)   Re-inspection . . . . . . . . . . . . . . . . . $25.00

Section 2.   The Code of Ordinances, City of Urbana, Chapter 12.5, "Landlord-Tenant Relationships," Article III, Section 15, Subsection (a), is hereby amended and shall read as follows:

Section 15. Violations.

(a)   Except as otherwise provided in this Code, violations of this Ordinance shall be punishable by fine of not less than One Hundred and Thirty Five ($135) dollars nor more than Seven Hundred Fifty ($750) dollars for each violation. The City may seek remedies which include corrective action or prohibitions as a part of its relief. In the event of conviction on three (3) or more offenses, the City shall also be entitled to recover its costs and reasonable attorney's fees in addition to fines imposed by the Court.



Section 3.   Those sections, paragraphs, and provisions of the Code of Ordinances, City of Urbana, that are not expressly amended or repealed by this Ordinance are hereby re-enacted, and it is expressly declared to be the intention of this Ordinance not to repeal or amend any portions of the Code of Ordinances, City of Urbana, other than those expressly set forth as amended or repealed in this Ordinance. The invalidity of any section or provision of this Ordinance hereby passed and approved shall not invalidate other sections or provisions thereof.

Section 4.   This Ordinance shall not be construed to affect any suit or proceeding pending in any court, or any rights acquired, or a liability incurred, or any cause or causes of action acquired or existing prior to the effective date of this Ordinance; nor shall any right or remedy of any character be lost, impaired, or affected by this Ordinance.

Section 5.   This Ordinance shall be in full force and effect from and after its passage.

This Ordinance is hereby passed by the affirmative vote, the "ayes" and "nays" being called, of a majority of the members of the Council of the City of Urbana, Illinois, at a meeting of said Council.

PASSED by the City Council this ___4th___ day of ___September___, __2007__.

AYES: Barnes, Bowersox, Chynoweth, Lewis, Roberts, Smyth, Stevenson

NAYS:

ABSTAINS:

Phyllis D. Clark, City Clerk

APPROVED by the Mayor this ___6th___ day of ___September___, __2007__.

Laurel Lunt Prussing, Mayor