**E-FILED**
Monday, 05 May, 2008  04:50:50 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| DONALD KRULL, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No.08-2079 |
| | ) | |
| THE CITY OF URBANA, ILLINOIS, | ) | |
|     Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**RESPONSE TO MOTION TO DISMISS**

**I.      Plaintiff's privacy and possessory interests in his residence, to which he has an exclusive leasehold, confer standing upon him to seek to enjoin unconstitutional searches thereof, when there is a substantial danger he will not have a further opportunity to prevent becoming a victim of an unlawful search.**

A Plaintiff's standing to sue is essential to his invocation of the jurisdiction of the courts under the Constitution's case-or-controversy requirement.  *See DH2, Inc. v. U.S. S.E.C.,* 422 F.3d 591, 596 (C.A.7 2005).  A Plaintiff will have standing when there is "(i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, (ii) a causal relation between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant, and (iii) a likelihood that the injury will be redressed by a favorable decision." *Id.*

All three elements are manifest in this case because (i) Defendant is already enforcing its ordinance, has already searched homes in Plaintiff's building, and maintains in the text of this ordinance that it will proceed to search Plaintiff's home, without necessarily securing Plaintiff's actual communicated consent; (ii) Defendant is violating Plaintiff's privacy pursuant to the ordinance Plaintiff is challenging, and (iii) declaring

1

the ordinance unconstitutional and enjoining Defendant from enforcing it will redress Plaintiff's injuries.

A lessee has sufficient posssssory interest in the leased premises to confer standing for purposes of protesting a search under the Fourth Amendment. *See Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 540 (1967). Moreover, all of the expectation of and interest in the privacy of an individual's personal home, augments Plaintiff's position because the leased premises is his private residence. Indeed "physical entry of the home is the chief evil against which . . . the Fourth Amendment is directed." *U.S. v. U.S. Dist. Court for the Eastern Dist. of Mich.,* 407 U.S. 297, 313 (1972) (Powell, J.).

Defendant's injury to Plaintiff's interest in his home is direct and imminent, not conjectural because Defendant is continuing to search homes on an ongoing basis, and the ordinance's failure to require actual consent means a substantial likelihood that the search will come without warning.  In other words, there is sufficient likelihood that Plaintiff will not have another opportunity to intervene before an unconstitutional search - that any arbitrary time when injury is any more imminent, will also be too late.  The requirement of "actual *or imminent*" does not mean that a Plaintiff has to wait for his rights to be violated to sue.  It is not conjectural, but statistically inevitable, that the notice and consent provision of this ordinance will fail, resulting in a nonconsensual, unconstitutional search of Plaintiff's or another individual's home *before there is any meaningful opportunity to prevent the unlawful search*.  Based on the reliability of the postal service, the only thing that is speculative, is the amount of time that will pass before an unconstitutional search occurs. Because Plaintiff and many others in this

university community are often not home for many days at a time, the amount of time that can be expected to pass before a nonconsensual, unconstitutional suit for that reason will be much, much shorter.  But just the same, the victim will have no opportunity to protest before it is too late – only the inferred waiver of constitutional rights to protest after-the-fact.  Defendant's contention that no injury is imminent is like saying that playing Russian roulette is no imminent danger to one's life.

Indeed, it is exactly because of the danger of nonconsensual warrantless searches that inferring consent to search as Defendant's ordinance does, is unconstitutional, as Plaintiff outlines in Argument III herein.  It would be disingenuous for Plaintiff to have to wait until after a search that is already known to be unconstitutional, to defend the privacy of his home.

Defendant's use of the unconstitutional ordinance as the predicate for its supposed authority for the unlawful searches also satisfies the causality requirement for standing. Plaintiff has brought this suit to challenge the constitutionality of the ordinance and the searches thereunder, and therefore complains in court of exactly the causes of the injury to his protected interest, the sanctity of his very home!

Finally, the remedial powers of the Court are eminently capable of redressing Plaintiff's injuries because an injunction would prevent Defendant from further violations of Plaintiff's home.  It the established province of the courts to prevent enforcement of unconstitutional statutes, *see Marbury v. Madison*, 5 U.S. (1 Cranch) 137, and the unconstitutional statute in this case bears no exceptional features that make enjoining its enforcement infeasible or would otherwise render the remedy ineffective.

In summary, because Plaintiff is asking for an achievable redress of conduct that is directly causing imminent injury to his privacy interest in his home, he has standing.

**II.     Because unconstitutional searches would proximately result from dismissal of this case, and because the Court's injunctive powers can prevent them and thereby redress Plaintiff's claims, the case is ripe.**

Similar to the constitutional case-or-controversy requirement, courts also use the ripeness doctrine to ensure that only cases that present a real and present conflict are adjudicated. *See Tobin v. City of Peoria, Ill.,* 939 F. Supp. 628, 634 (C.D. Ill. 1996). A controversy is ripe when it has taken sufficient shape "so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them," *Peick v. Pension Ben. Guar. Corp.,* 724 F.2d 1247, 1261 (quoting *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 244 (1952)). A substantially similar formulation of the test for ripeness concerns the "fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration," *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148-49 (1967). In this case, the controversy has developed sufficiently to define the relevant legal issues and the consequences of court-ordered relief, and expose Plaintiff to severe hardship should adjudication be withheld. Once violated by a capricious intrusion, a home is never the same.

The legal issues in this case are clearly defined. They are (1) whether the Fourth Amendment allows Defendant to assume that a resident has received its notice and consented to a search, and (2) whether the ordinance's standards are unconstitutionally vague and ambiguous, or irrationally arbitrary and discriminatory.

4

Defendant's attempt to analogize the development of legal issues in this case to *Tobin* and *Hometown Co-op. Apartments v. City of Hometown,* 515 F.Supp. 502 (N.D. Ill. 1981), is inaccurate and misplaced because those cases did not involve a dispute about the constitutionality of the ordinances' warrant provisions, and this one does. With a valid warrant provision, a justiciable controversy could arise only if the municipalities continued to hold the plaintiffs in violation of the ordinance for refusing inspection, while failing to obtain a search warrant to perform one. By contrast, this case involves an attack on the warrant provisions on at least two separate grounds. Because the warrant provisions in the ordinance in this case are unconstitutional, an administrative warrant issued under them will also be unconstitutional, and Plaintiff's rights will be violated *whether or not* Defendant seeks a warrant. When the warrant provisions are unconstitutional, the relevant danger is not that the municipality will fail to get a warrant, but that it *will get* one under the unlawful provisions and execute it. That impending danger comes into existence when the municipality forms the present intent to search people's homes, which it has already manifested in this case by searching other homes in Plaintiff's building, and predicating its reason for the ordinance being the eventual search of *all* rental housing.

Likewise, the facts make it clear what the effects of the Court's decision will be. A decision for Plaintiff will mean that Defendant will have secure actual consent and provide rational, non-arbitrary standards for the search of properties. A decision for Defendant means that people's homes will be searched while they are away on vacation and that the burden of privacy invasion will be irrationally foist in disproportionate shares

on certain segments of the population, including this university community's large transient and underprivileged population.

Moreover, declining to adjudicate this case would cause Plaintiff grievous hardship by exposing him to more unconstitutional searches while denying him redress in court. Indeed the ripeness of this case is most poignantly illustrated by the fact that Defendant is already searching people's homes. Like the doctrine of standing, ripeness is not so onerous that a Plaintiff must wait for irreparable harm to already be done, before suing to prevent it. This action is Plaintiff's only opportunity to take himself out of the Russian roulette game (where the city spins the chambers) of nonconsensual warrantless searches before it's too late.

In short, the clearly defined legal issues, the readily comprehensible consequences of ruling on this case, and the irreversible hardship that would fall on Plaintiff absent adjudication of this case, all make it ripe for decision.

## III.    Plaintiff has a cause of action because the ordinance allows for nonconsensual warrantless searches when residents are out of town.

As noted in the foregoing Response to Motion to Dismiss, Defendant's motion does not challenge the merits of Plaintiff's claim that the ordinance allows for nonconsensual warrantless searches of the homes of individuals who are out of town. However, the merits of the issue are as follows:

Inferring consent to a search is overwhelmingly disfavored. *See, e.g. U.S. v. Viale,* 312 F.2d 595, 601 (C.A. 2 N.Y. 1963), *cert. denied,* 373 U.S. 903; *U.S. v. Cogwell*, 486 F.2d 823, 837 (C.A. 7 Ill. 1973), *cert. denied* 416 U.S. 959. Most importantly, in the cases where it has been held constitutional to infer consent, there is still some affirmative

behavior ("words, gestures, or conduct") manifesting consent. *See, e.g. U.S. v. Taylor,* 279 F.Supp. 2d 242, 245 (S.D.N.Y. 2003). Plaintiff is unaware of any case in which informational silence has been held to be consent.

Therefore it is clearly unreasonable for Defendant to infer consent from an individual's failure to respond to its notice missive, which the individual may or may not have ever even received, and any search executed to such "presumed consent" is flagrantly unconstitutional.

**IV.     Plaintiff has a cause of action because the ordinance's search criteria are unconstitutionally vague and ambiguous, and to the extent they are comprehensible, they are arbitrary and capriciously open to discriminatory abuse.**

As noted in the foregoing Response to Motion to Dismiss, Defendant's motion does not challenge the merits of Plaintiff's claim that the standards in the ordinance are unconstitutionally vague and ambiguous, or to the extent that they are meaningful, are irrationally arbitrary and open to discriminatory application. However, the merits of the issue are as follows:

While *Camara* does not establish minimum threshold requirements for the "reasonable legislative or administrative standards" necessary to make an administrative warrant constitutional, clearly those codified standards are still subject to the same due process and equal protection rules that apply to all statutes and ordinances regardless of their purpose. For example, if an ordinance establishing standards for an administrative search program is too vague or ambiguous to give notice, then it must fail under the due process clause, the same as any other law would. Likewise for equal protection if there is no rational basis for a classification it makes.

The due process prohibition on vague and ambiguous enactments follows at least two separate concepts relevant here: first, the law must be specific enough to give notice of what conduct is prohibited, required, etc.; and second, it must provide explicit standards to prevent arbitrary or discriminatory enforcement. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The standards in the ordinance in this case fail to give notice because their vaguenesses and ambiguities leave it unclear for enforcing officials, landlords, and tenants, whether or not several classes of property are included in the ordinance. But much more dangerously, the ordinance provides unbridled latitude for arbitrary and discriminatory enforcement because the rules for deciding whose home gets searched and when, are so loose and open-ended. If Defendant searched Plaintiff's home five more times before searching someone else's once, whatever the reason, it would be easily justified by pasting together enough vague standards from the ordinance like "the overall condition of the neighborhood." Indeed, instead of establishing legislatively, a fair and objective system for the searches, in Section 9 the ordinance specifically delegates to the "Building Official" the sweeping power to make up the schedule according to the pliably vague criteria. Such a carte-blanche delegation of legislative authority is a flagrant violation both of separation of powers and due process.

Moreover, what standards are established by the ordinance, draw irrational classifications that are inconsistent with the equal protection clause. For example, the ordinance makes a classification of an individual's home according to "the amount of the housing stock in each rental housing type." There is no apparent rational basis for such a classification, and because the ordinance leaves it completely up to the "Building Official" how the different types of housing are prioritized, it is impossible to infer what

the rational basis might have been.  Indeed such an indifferent delegation of authority

over the classification is tantamount to proof that the classification was made with no

rational basis, nor procedural limitations on the unfettered whim of the officers who

decide where to search.

In summary, far from the "reasonable legislative or administrative standards"

contemplated in *Camara,* this ordinance contains only a confused and disingenuous

morass of indecipherable and irrational rules, which are ultimately rendered meaningless

anyway by the unbridled grant of discretion to the "Building Official," ringmaster of the

circus.

**V.    Plaintiff has a cause of action because *Camara* manifestly eviscerates the
probable cause requirement of the Fourth Amendment in irreconcilable logical
conflict with other precedent still considered good law, and must be overruled.**

The text of the Fourth Amendment reads:  ***"The right of the people to be secure in***

***their persons, houses, papers, and effects, against unreasonable searches and seizures,***

***shall not be violated, and no Warrants shall issue, but upon probable cause, supported***

***by Oath or affirmation, and particularly describing the place to be searched, and the***

***persons or things to be seized."***  U.S. Const. Amend. IV.  *Camara* is stridently

inconsistent with any true reading of the Amendment because it authorizes schemes of

systematic, or essentially random, searches devoid of any individualized suspicion, which

have long been, and still are, recognized as caustically unconstitutional, *see Carroll v.*

*U.S.,* 267 U.S. 132, 154 (1925), *Welch v. Riddle,* 402 F.Supp. 464 (D.C. Va. 1975), *aff'd,*

564 F.2d 94, *cert. denied,* 435 U.S. 944 (1978), *U.S. v. Mallides,* 473 F.2d 859 (C.A. 9

(Cal.) 1973) ("Federal agents cannot constitutionally stop automobiles systematically or

randomly on the chance of discovering something illegal.")

Indeed, careful reading of the entire language of the Amendment shows that individualized suspicion is an essential component of the probable cause requirement. Against the background of the general right of the "people to be secure in their persons, houses, papers, and effects," there is the specific requirement that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." The requirement of particularized description clearly contemplates preexisting knowledge about the specific conditions or activities that justify government incursion into a person's spheres of privacy. *Carroll* and the other cases prohibiting systematic and random searches are consistent with this individualized suspicion requirement inevitably flowing from the language of the Amendment.

Moreover, it is specifically noteworthy that systematic or random searches of *automobiles* have been so consistently held so deplorable, while logically indistinguishable search regimes of individuals' homes have been rubber-stamped, even though supposedly, individuals have a *greater* expectation of privacy in the home. And it is irrelevant that the searches in *Carroll* were warrantless and those in *Camara* pursuant to a warrant because the warrant becomes an empty and meaningless formality under a regime where it always issues because "probable cause to issue a warrant to inspect must exist if reasonable legislative or administrative standards," which "will not necessarily depend on specific knowledge of the condition of the particular dwelling," "are satisfied," *Camara*, 387 U.S. at 538. If all that is required for issuance of the warrant is falling under the purview of a scheme of systematized searches, there is no cognizable distinction between the flagrantly unconstitutional systematized random searches in *Carroll* and the judicially ratified systematized random searches in *Camara.*

10

Instead of confronting this irreconcilable logical incongruity openly, *Camara* just ignores it, pretends it doesn't exist, doesn't discuss *Carroll* or any of the other systematic search cases, and proceeds lackadaisically on down the slippery slope of evisceration of the Fourth Amendment. *Camara* is one of a long string of opinions that are poster children for a society that is unwilling to pay the price of the freedom that it prides so highly and is standing in a tantrum of childlike denial that such a price even exists. Everyone wants safe buildings, protection from violent people, we all agree on those things – but in direct analogy with the economic principle of diminishing marginal returns, beyond a certain point each additional measure of safety comes at a disproportionately greater cost to liberty, often in the form of burdens like searches and seizures. The Fourth Amendment represented a collective decision on the part of our society not to pursue safety too far down the curve of diminishing marginal returns, and the consequences of disallowing some searches represents the price of preserving our liberty. Since then, our jurisprudence has correctly recognized that individualized suspicion is one of the most essential touchstones in discerning where on the continuum of the safety-liberty trade-off we have collectively set our priorities. *Camara* abrogates our society's constitutionally set priorities by kowtowing to the idealistic fantasy of "*universal* compliance with . . . municipal codes," 387 U.S. at 535 (emphasis added), apparently oblivious to the fact that universal compliance with the law is only attainable with universal loss of liberty. Such a **judicial reprioritization** of our society's values in defiance of the constitutionally chosen level of trade-off is inappropriate for our system of government. *Camara* is offensive to the Constitution and should be overruled.

Finally, with appropriate policy the costs of respecting liberty will not be as high as the alarmist passages of the *Camara* opinion suggest.  Policy tools like criminal penalties, *see, e.g.* 33 U.S.C. 1319(c), and Superfund liability, *see* 26 U.S.C. 9507, 42 U.S.C. 9601 *et seq*, have proven effective in environmental protection and can be readily applied in the context of building safety.  And lastly, searches without individualized suspicion would not even be totally unavailable as a policy tool because they could still be performed when people vacate to move, the privacy interest in an empty residence changing hands being so much less than when the same premises is someone's home. With such a complement of constitutional policy options, there is no sense in vitiating the Constitution and compromising civil liberty when the same benefits sought can be achieved by constitutional means.

Respectfully submitted,

**s/ Robert Auler**
Robert I. Auler Bar Number: 0082074
Counsel for Plaintiff
Auler Law Offices, P.C.
202 W. Green Street
Urbana, IL  61801
Telephone: (217) 384-4567
Fax: (217) 987-6543
Email: aulerlaw@yahoo.com

Auler Law Offices, P.C.

202 W. Green Street
Urbana, IL  61801

217 384 3080

aulerlaw@yahoo.com